Filed 7/29/15  Schwartz v. Spillard CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MEGAN SCHWARTZ,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EVERETT SPILLARD,<br><br>        Defendant and Appellant. | A141071<br><br>(Humboldt County<br>Super. Ct. No. FL100538) |

This is an appeal from a domestic violence restraining order (Fam. Code, § 6250 et seq.) [1] obtained by Megan Schwartz against appellant, Everett Spillard.  Schwartz and Spillard never married but formerly lived together and have a son, born in August 2006.  The child is the subject of a dispute between the parties regarding custody and visitation that commenced prior to the time Schwartz sought a restraining order under the Domestic Violence Prevention Act (DVPA).  (§ 6200 et seq.)

As will be seen, Spillard's briefs, which he filed in propria persona, fail to conform to the California Rules of Court [2] and consist not of intelligible legal arguments but pronunciamentos.  Moreover, the record he presents fails to provide an adequate basis upon which to review most of his claims.  As we understand his opening brief, Spillard contends that (1) Humboldt County Superior Court Judge Joyce Hinrichs improperly participated in the case after she had been peremptorily challenged under section 170.6 of

---

[1] All statutory references are to the Family Code unless otherwise indicated.)

[2] Had Schwartz moved to strike the brief, as she should have, the motion would have been granted.

1

the Code of Civil Procedure, and all subsequent rulings of Judge Timothy P. Cissna are therefore null and void; (2) the description of abuse set forth by Schwartz in her request for a domestic violence restraining order was neither sworn to nor made under penalty of perjury, and Schwartz was therefore not entitled to the relief she sought and obtained; (3) the hearing conducted by Judge Cissna prior to granting Schwartz's request for a protective order took place after expiration of the time allowed by law and the order is therefore invalid; and (4) the restraining order Judge Cissna granted is unsupported by sufficient evidence.

As Spillard has not provided an adequate record upon which we can decide his first, third, and fourth claims, we reject them on that ground. As the remaining claim is meritless, we shall affirm the judgment.

## PROCEEDINGS BELOW

The proceedings pertinent to this appeal were commenced on November 22, 2013, when Schwartz filed a request for a protective order under the DVPA. (§ 6250 et seq.) Schwartz asked the court to order that appellant not harass, attack, strike, threaten, or assault her, her husband, and the child. Three days later, on November 25, Judge Hinrichs issued a temporary restraining order granting the relief Schwartz requested. By its own terms, that order expired on December 16, 2013, the date set for a hearing on Schwartz's motion for a domestic violence protective order.

About two years earlier, on December 8, 2011, appellant had filed an affidavit of prejudice peremptorily challenging Judge Hinrichs under Code of Civil Procedure section 170.6. It appears that the only proceeding involving the parties that was then before the trial court was the prior child custody and visitation proceeding.

On December 12, 2013, Spillard filed his response to Schwartz's request for a domestic violence restraining order.

As we later discuss in greater detail, the record does not establish whether the December 16 hearing noticed by Judge Hinrichs took place, because the January 2, 2014 hearing is the only one shown by the record to have taken place after Judge Hinrich issued her temporary restraining order.

2

The January 2, 2014 hearing, at which the parties and four other witnesses testified was conducted by Judge Cissna. At the conclusion of the hearing Judge Cissna issued a restraining order prohibiting appellant from harassing Schwartz and her husband in any way, and directing him to stay at least 100 yards away from Schwartz and her husband at their home, workplaces, vehicles, or at Schwartz's school. (By agreement of the parties, the child was not designated a protected person.) This is the order from which Spillard timely appealed.[3]

## FACTS

Due to the absence of a reporter's transcript of any of the hearings that took place in the trial court,[4] the only facts we have regarding the request for a protective order are those set forth by Schwartz in her Request for Domestic Violence Restraining Order and those described by Spillard in his response to that request.

Schwartz's statement is in material part as follows: "Mr. Spillard is a convicted felon. He is extremely aggressive and threatening in virtually everything he does. We were involved in a custody trial ending in May 2013, with review dates to check on his compliance with the orders . . . ." Immediately after that proceeding ended, "Mr. Spillard began harassing me with numerous text messages. I repeatedly asked him to stop texting me after his first four texts. He ignored me and sent me 15 more texts. I texted him the following message: 'Please stop texting me.' In response, he sent nine more texts, threatening and harassing me. I then again texted him, asking him to stop, and he

---

[3] On May 24, 2013, after conducting a hearing, Judge Cissna issued an order finding that Spillard willfully disobeyed custody and visitation orders. Judge Cissna sentenced Spillard to one day in county jail but stayed imposition of that sentence for a period of one year on the condition Spillard obey all orders entered in the family law case and all laws. This order is not before us.

[4] In his notice designating the record on appeal, appellant checked the box indicating he requested a reporter's transcript. However, he did not check the boxes indicating he had deposited the approximate cost of transcribing the designated proceedings, or that the reporter waived the deposit; nor did he either attach a certified transcript under rule 8.130(b)(3) of the California Rules of Court, or designate the proceedings in the superior court to be included in the reporter's transcript.

3

immediately sent two more texts threatening and harassing me.  I texted him yet another message:  'Please stop texting me.'  He still continued to text me.

"On November 9, 2013, the harassing and threatening texts resumed.  After two harassing texts on November 9, 2013, I again asked Mr. Spillard, via text:  'Please stop harassing and threatening me.'  In response, he sent yet three more threatening and harassing texts.

"With respect to his texts sent to me on November 7 and November 9, 2013, it is a pattern of conduct that I have suffered with Mr. Spillard in the past.  While our custody case was pending, Mr. Spillard stated to me that he has people watching me and my husband, our house and our business, and that, as a convict, he knows all sorts of people who can hurt us, but he tells them to stay back.  In his text on November 7, 2013, Mr. Spillard threatened that he would stop holding these people back from harming my husband, concluding:  'You know I ain't bullshitting.'

"Mr. Spillard has threatened to ruin me and my business.  He has threatened to burn my property, and has threatened to beat up my husband.  In his texts on November 7, 2013, he again threatened my husband and then commented to the effect that he was not afraid of going to jail because he could use the vacation, texting:  'and jail.  I could.  Use the vacation.'

"Mr. Spillard also makes threats to me and my husband on his Facebook page.  After his harassing and threatening messages to me on November 7, 2013, I checked his Facebook page and found the following posting by Mr. Spillard for November 6, 2013 (the day before our last court appearance, when the harassing text messages started):  A poster with a fist, together with the inscription, 'Keep Calm . . . And Throat Punch A Fucker!'  Mr. Spillard's comment above that poster was as follows:

'evvvvvvvvvvvvvvvvvvvvvan swarthes or whatever ur name is ass isssss mmmmine.'  (Evan Schwartz is my husband) . . . .

"Mr. Spillard has engaged in such a continuous pattern of harassing and intimidation that in January 2010 my son and I were enrolled in the California Safe at Home, Confidential Address Program. . . ."

Copies of the numerous e-mails and Facebook page Schwartz referred to (which comprise more than 100 pages in the clerk's transcript) were received in evidence and are a part of the record.

The form Response to Request for Domestic Violence Restraining Order filed by Spillard on December 12, 2013, required him to set forth "specific facts and reasons" explaining his disagreement with the protective orders requested. Referring to Schwartz by her maiden name, Krebs, Spillard's "specific facts and reasons" are as follows:

"Judge Hinrichs disqualified signed the order therefore it is void under CCP sec 170.6[.]

"Petitioner Krebs typed statement is not a declaration and is unsworn[.]

"Petitioner Krebs recitation of facts is perjurious[.]

"Petitioner Krebs suit for Domestic Violence Restraining Order is frivolous[.]

"Petitioner Krebs is attempting to perpetrate a fraud on the court[.]

"Under CCP sec. 170.6 the restraining order is a nullity[.]

"Petitioner Krebs as an actual abuser should be forced to attend batterer intervention[.]

"Mediation should be ordered[.]

"Petitioner Krebs should be ordered under discovery to undergo mental examination[.]"

## DISCUSSION

### 1. *The Record Does Not Establish That Judge Hinrichs's Temporary Order Rendered Judge Cissna's Restraining Order Invalid*

Spillard filed his affidavit of prejudice against Judge Hinrichs on December 8, 2011. The Humboldt County case number on the pleading is FL100538, which is the same as the number of the present case. However, Spillard's opening brief represents that the "instant case from which this appeal is taken" is different from the custody and visitation case, which he identifies as "Case No. CV100329." His reply brief, which does not consist of numbered pages, assigns still another case number to the custody case: "Case No. CP140676" In any case, approximately two years later, on November 22, 2013, Schwartz filed her request for the domestic violence restraining order at issue here.

5

Three days later, on November 25, 2013, Judge Hinrich issued a form temporary restraining order that, by its own terms, expired on December 16, 2013, at 8:30 a.m., the date and time set for the hearing on the extended protective order Schwartz requested under the DVPA. On the same date, Judge Hinrichs issued a form Child Custody and Visitation Order specifying the times and places at which, until the December 16 hearing, Spillard was authorized to visit the parties' child and formal notice of the hearing on December 16 regarding the protective order.

On December 30, Spillard moved to vacate Judge Hinrichs's orders on the ground she had been previously disqualified.

Several days later, on January 2, 2014, Judge Cissna struck the temporary order signed by Judge Hinrichs, conducted a lengthy hearing on the merits of Schwartz's request for a protective order, and granted the order.

It is, for a variety of reasons, unclear whether Spillard has cause for complaint on the ground of Code of Civil Procedure section 170.6. Among other things, the record does not show whether Spillard's effort to disqualify Judge Hinrichs was timely or when and why she left the case, matters Spillard never discusses. Moreover, Judge Hinrichs's temporary order—which seems to have merely maintained the status quo and was not a final determination of the parties' rights—was promptly stricken, and the case was promptly assigned to Judge Cissna. Nothing in the record suggests Judge Hinrichs participated in any way in the DVPA proceedings that led to issuance of the challenged protective order.

In any case, as earlier noted, on November 25, 2013, Judge Hinrichs issued a form temporary restraining order that by its own terms expired on December 16, 2013, at 8:30 a.m., the date and time set for a hearing on the matter within the time period specified by section 242. The record contains no transcript of a hearing on December 16, 2013, (if one took place) or of any other hearing conducted by the trial court, so we do not know whether Judge Hinrichs agreed she was disqualified, recused herself, or left the case for some other reason. Also, the briefs and record are silent as to whether any distinction pertinent to Code of Civil Procedure section 170.6 can be made between the

6

custody and visitation proceedings apparently before the court when Spillard sought to disqualify Judge Hinrichs and the subsequent proceeding initiated by Schwartz under the DVPA. (At the time Spillard challenged Judge Hinrichs, the DVPA proceeding had not commenced.) Nor do we know how Spillard's request to disqualify was treated, or why the alleged invalidity of Judge Hinrichs's order infects that issued by Judge Cissna, which is the only order Spillard appeals from.

Spillard's briefs, which only present facts favorable to him, merely reargue the "facts" as he would have them.[5] Such a presentation not only violates rule 8.204(a)(2)(C)

---

[5] Perhaps the most coherent "Statement of Facts" Spillard provides in either of his briefs is set forth in his unpaginated reply brief, which contains no citations to the record, and is as follows:

"EVERETT SPILLARD II is in fact a convicted felon, having been confined in Ohio for a failure to appear, during the time MEGAN KREBS was concocting to enroll in the program California Safe at Home, Confidential Address Program in which she was enrolled. This was a ploy as EVERETT SPILLARD II was incarcerated in Ohio at the time and of no possible threat to her, nor has he ever presented a threat to her.

"It was in fact she (Megan Krebs) who was guilty of domestic violence on multiple occasions as testified to [at unreported hearing] by percipient witness Gaylia Wilson, KREBS having knocked out EVERETT SPILLARD II's front teeth causing him to wear a partial dental device.

"EVAN SCHWARTZ has consistently harassed EVERETT II and was barred from being present at exchanges of the minor child by the FINDINGS AND ORDER AFTER HEARING. He was ordered to attend counseling for 'age appropriate step-parent counseling,' but no proof has been forthcoming that he did so. A subpoena is currently outstanding to provide this proof.

"EVERETT II has filed a Civil Harassment Restraining Order against EVAN SCHWARTZ over incidents that took place at the last custody exchange. Case No. CP140676 on November 16, 2014. EVAN SCHWARTZ has consistently harassed and antagonized EVERETT SPILLARD II attempting to incite physical violence, which appellant has consistently resisted. EVERETT SPILLARD II has never been convicted of any crime and allegations of his violent nature are unsubstantiated.

"No evidence of threats from other persons are presented to the court but simply unsubstantiated allegations.

"EVERETT SPILLARD II never had a pattern of hostile or threatening actions to Ms. Krebs who introduced no testimony to that fact."

of the California Rules of Court, but disregards the most fundamental rules of appellate review. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 365, pp. 421-423, and § 368, pp. 425-426.) The deficiencies in Spillard's briefs are exacerbated by the inadequacy of the record he presented.

" ' "A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." [Citation.]' [Citations.] 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' [Citations.]" (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) The record Spillard has presented, which as we have said contains no reporter transcripts, does not provide a basis upon which we could confidently determine the merits of Spillard's assertion that, under Code of Civil Procedure section 170.6, Judge Hinrichs's issuance of a temporary and subsequently stricken order voids the protective order later issued by Judge Cissna.

Accordingly, we reject Spillard's request to invalidate the challenged protective order.

**2.** ***The Descriptions of Abuse Required to Be Set Forth in a Request for a Domestic Violence Restraining Order Are Not Required to Be Sworn or Made Under Penalty of Perjury and, in any case, Spillard Was Not Prejudiced by Them***

The description of abuses Schwartz attached to her request for a protective order, most of which we earlier quoted, was required by Judicial Council Form No. DV-100. Question No. 25, at page 5 of the form, requires the person requesting the protective

---

It bears noting that, as shown by the minute order, Schwartz and Spillard both testified (and were cross-examined) at the hearing on January 2, 2014, as did four other witnesses, including Schwartz's husband and Gaylia Wilson. But the absence in the record of a transcript of that hearing renders it impossible to know the nature of the testimony received at that hearing, though it was undoubtedly crucial to the trial court's resolution of this case.

order to describe how the person he or she seeks protection from "abused you or your children." The form states that an attachment may be used if the declarant requires more space than the form provides. Schwartz used such an attachment. Nothing in the form indicates that such an attachment need itself be sworn or issued under penalty of perjury, but the signature line of the form is preceded by the statement that: "I declare under penalty of perjury under the laws of California that the information above is true and correct." As the attachment was authorized by and essentially made a part of the form, the declaration required by the form, which Schwartz made, applied as well to the representations set forth by her in the attachment.

Spillard asserts that Schwartz's attachment to the form request for a protective order constitutes an "affidavit" and asks us to take judicial notice of the definition of "affidavit" in Black's Law Dictionary: "a written statement of facts voluntarily made by an affiant under an oath or affirmation administered by a person authorized to do so under law." Because Black's Law Dictionary is not a source of law, we decline to judicially notice the definition.

Finally, the description of the abuse Schwartz set forth in the attachment to her form request for a protective order lacks the significance Spillard ascribes to it. The far more significant description is that Schwartz and her husband described under oath at the January 2 hearing. The minute order relating to the hearing indicates that Spillard subjected Schwartz to cross-examination and re-cross-examination. The minute order also indicates that after Spillard's testimony and that of the three witnesses who testified on his behalf, Schwartz's counsel recalled Schwartz to the stand and conducted redirect, after which Spillard conducted re-cross. Spillard was provided ample opportunity to examine Schwartz while she was under oath about the abuse she claimed to have suffered at his hands.

### 3. *Spillard Cannot Show That the Hearing Conducted by Judge Cissna Was Untimely*

Spillard maintains that the hearing conducted by Judge Cissna on the merits of Schwartz's request for a protective order took place after expiration of the time allowed by Code of Civil Procedure section 527.6, subdivision (g), which states that, "[w]ithin 21

9

days, or, if good cause appears to the court, 25 days from a date that a petition for the temporary order is granted or denied, a hearing shall be held on the petition for an injunction." The hearing conducted by Judge Cissna was held 36 days after the temporary protective order had been granted by Judge Hinrichs.

Section 527.6 of the Code of Civil Procedure—which is not a part of the DVPA—is the general civil harassment statute that protects any person subject to "harassment" and defines "harassment" differently from the DVPA. (Compare Code Civ. Proc., § 527.6, subd. (b) & Fam. Code, §§ 6203, 6211, 6320.) Section 242 of the Family Code prescribes time periods for hearings on domestic violence protective orders which are similar to those prescribed in subdivision (g) of section 527.6 of the Code of Civil Procedure, except that subdivision (b) of section 242 provides that if a hearing is not held within the specified time period, "the court may nonetheless hear the matter, but the order is unenforceable unless reissued," as authorized by section 245.

As noted, the temporary order filed by Judge Hinrichs on November 25, 2013, expired by its own terms "at the date and time of the hearing" set by the order, which was December 16, 2013. December 16 is 21 days after the November 25 order, which is within the time period prescribed by section 242. The problem is that the parties agree that the hearing on Schwartz's request for a domestic violence restraining order was held on January 2, 2014,[6] (beyond the period allowed by section 242) but the clerk's transcript provides no indication whether a hearing was held on December 16, at which the temporary order could have been reissued, which would have extended the period prescribed by section 242. (§ 245.)

In any event, considering that the December 16 hearing date noticed by Judge Hinrichs's November 25 order could not have been vacated, or her temporary restraining order reissued, and the January 2 hearing could not have been set, as it must have been,

---

[6] The clerk's transcript indicates that the Judicial Council Form DV-130 granting a "Restraining Order After Hearing (Order of Protection)" requested by Schwartz was "RECEIVED" by the clerk of the Humboldt County Superior Court on January 3, 2014, but not "FILED" with the clerk until January 6.

10

without a judicial order, the record, which contains no such order, is obviously deficient. This deficiency leaves open at least two possibilities: that the temporary restraining order may have been timely "reissued," so that the 21- or 24-day period prescribed in section 242 was extended pursuant to section 245 or, alternatively, that the January 2, 2014 hearing was noticed on the basis of a judicial determination that failure to promptly issue a domestic violence restraining order might jeopardize Schwartz's safety or that of the child. Under the Family Code, such an order may be issued after expiration of a prior protective order made concomitantly with a custody or visitation order, as happened in this case. (§ 6340, subd. (a).)

As we have explained, all intendments and presumptions are indulged to support the judgment on matters as to which the record is silent. Error must be affirmatively shown and where, as here, the record is inadequate for meaningful review, " 'the appellant defaults and the decision of the trial court should be affirmed.' [Citations.]" (*Gee v. American Realty & Construction, Inc., supra,* 99 Cal.App.4th at p. 1416.) Based once again on the presumption that that an order of the lower court is presumed correct and cannot be rebutted except on the basis of error shown by the record, we are compelled to reject Spillard's claim. It is inconceivable that the hearing shown by the record and agreed by the parties to have been held on January 2, 2014, could have been held without being judicially noticed and ordered by the court, yet no such order is contained in the record. Without the missing order, Spillard cannot affirmatively establish that the January hearing impermissibly exceeded the time requirements specified by section 242, even overlooking his failure to rely on the proper statute.

Spillard's claim that the January 2, 2014 hearing was untimely and the protective order that issued on that date is therefore unenforceable, must be rejected.

**4.** ***The Record Does Not Show the Restraining Order is Unsupported by Substantial Evidence.***

Spillard's contention that the domestic violence restraining order is unsupported by the evidence, and therefore unjust, is of course a factual claim. The factual basis of the order granting the challenged protective order consists almost entirely of the

11

testimony at the July 2, 2013 hearing. Schwartz and her husband testified in support of granting the protective order; Spillard and the three witnesses he presented, Douglas Bragg, Benjamin Flores, and Gaylia Wilson, testified in opposition.[7] Spillard's inexplicable failure to provide the transcript of this hearing renders it impossible for us to evaluate his claim that it provides no substantial evidence in support of the order; which means we must reject the claim.

## DISPOSITION

The judgment is affirmed.

---

[7] The record does not indicate anything about Bragg and Flores other than their names. The augmented record does include a two and a half page declaration of Gaylia Wilson, who was for a period the "nanny" for the parties' child, but given her testimony at the January 2, 2014 hearing, there is no reason to think the trial court relied instead on the short declaration.

_____
Kline, P. J.

We concur:


_____
Richman, J.


_____
Miller, J.

*Schwartz v. Spillard* (A141071)